**2020 IL 124337**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 124337)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
PHOUVONE V. SOPHANAVONG, Appellee.

*Opinion filed August 20, 2020.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Kilbride, Theis, and Michael J. Burke concurred in the judgment and opinion.

Chief Justice Anne M. Burke specially concurred, with opinion.

Justice Karmeier dissented, with opinion.

Justice Neville dissented, with opinion.

**OPINION**

¶ 1 Section 5-3-1 of the Unified Code of Corrections (Code) (730 ILCS 5/5-3-1 (West 2012)) requires a circuit court to consider a presentence investigation (PSI) report prior to sentencing a defendant for a felony offense. However, with one exception,

> "the court need not order a presentence report of investigation where both parties agree to the imposition of a specific sentence, provided there is a finding made for the record as to the defendant's history of delinquency or criminality, including any previous sentence to a term of probation, periodic imprisonment, conditional discharge, or imprisonment." *Id.*

¶ 2 This appeal asks whether a circuit court's failure to strictly comply with the requirements to forgo a PSI report requires remand for a new sentencing hearing or whether a defendant can waive the issue by pleading guilty as well as forfeit the claim by failing to raise it in a postplea motion. We find waiver and forfeiture apply. Thus, we reverse the appellate court's judgment and affirm the circuit court's judgment.

¶ 3 BACKGROUND

¶ 4 In December 2013, a Tazewell County grand jury indicted defendant on three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2012)) in connection with the death of Laongdao Phangthong. The grand jury also indicted defendant on single counts of aggravated kidnapping (*id.* § 10-2(a)(8)) and violating an order of protection (*id.* § 12-3.4(a)(1)).

¶ 5 In April 2014, defendant agreed to plead guilty to one count of first degree murder. In return, the State agreed to dismiss the remaining charges in the indictment and to recommend a sentence of 55 years in prison, which included 30 years for first degree murder and a 25-year firearm enhancement (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2012)).

¶ 6 At the plea hearing, defense counsel asked that the record reflect that the agreed-upon terms were "effectively a life sentence" for defendant and, against counsel's advice, defendant insisted on accepting those terms. Although he

expressed dissatisfaction with the agreed-upon sentence, defendant chose to "take it."

¶ 7 At the circuit court's request, the State offered a factual basis for defendant's guilty plea. On October 11, 2013, defendant's estranged wife, Laongdao Phangthong, obtained a plenary order of protection against him, after she alleged that he threatened to shoot and kill her, then commit suicide. Less than a month later, on November 4, 2013, defendant parked his car at the factory where he worked and took something from the trunk. Shortly thereafter, defendant confronted Phangthong at a nearby factory where she worked, and an argument ensued. He then forced her into the passenger seat of her car and drove away.

¶ 8 The next day, police officers discovered Phangthong's car in a hospital parking lot. She was inside, dead from gunshot wounds. Officers later found defendant, armed with a handgun, in the basement of his home. During negotiations with police, he admitted kidnapping and then killing Phangthong. He stated that he "was going to jail for a long time" and shot himself in the chest. Bullets recovered from Phangthong matched the gun that defendant used. Police later recovered a note in defendant's handwriting, indicating that he did not intend to kill her but only did so after she tased him.

¶ 9 The circuit court accepted the factual basis, found defendant guilty per the negotiated plea agreement, and dismissed the remaining counts. The court then proceeded to sentencing and inquired about defendant's criminal history.

¶ 10 The State informed the circuit court that defendant had previously been convicted of manufacture or delivery of cannabis, a Class 1 felony, in 2004 and had also been convicted of a speeding offense and a seatbelt offense. The State did not mention the disposition of any of defendant's prior offenses. Upon inquiry, the parties informed the court that they were waiving a PSI report.

¶ 11 The circuit court concluded the sentencing hearing by sentencing defendant to 55 years in prison. The court then addressed him directly:

> "Mr. Sophanavong, even though you have plead[ed] guilty, you do have rights of appeal. But before taking an appeal you must file a Motion in this

Court within 30 days seeking leave to withdraw your plea of guilty and vacate this judgment and sentence.

That Motion must be in writing and set forth with particularity why it ought to be granted, or any claim not stated may be waived for purposes of appeal."

¶ 12    The following month, May 2014, defendant filed a timely *pro se* motion to withdraw his guilty plea, claiming he was not "in a coherent state of mind when [he] accepted the plea" and counsel was ineffective. He did not raise a claim that the circuit court failed to comply with section 5-3-1.

¶ 13    In October 2014, newly appointed counsel filed an amended motion to withdraw the guilty plea, alleging defendant had been suffering from extreme anxiety and duress when he pleaded guilty, he was unaware of potential lesser included offenses, he was actually innocent of first degree murder, and he was denied the effective assistance of counsel. Counsel did not raise any claim pertaining to section 5-3-1. After the circuit court denied the amended motion, defendant appealed, and the cause was remanded for compliance with Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013). *People v. Sophanavong*, No. 3-14-0864 (Sept. 19, 2016) (letter ruling vacating and remanding with instructions).

¶ 14    On remand, the circuit court appointed new counsel, who filed a second amended motion to withdraw the guilty plea in May 2017. Counsel alleged that defendant did not knowingly, understandingly, and voluntarily enter his guilty plea and that he received ineffective assistance of counsel. The motion did not raise any issue regarding section 5-3-1. In July 2017, the court denied the second amended motion.

¶ 15    On appeal, defendant abandoned his challenge to the circuit court's ruling on his second amended motion to withdraw his guilty plea. Instead, he argued his sentence should be vacated and the cause remanded for a new sentencing hearing because the court failed to strictly comply with section 5-3-1 of the Code when it accepted the parties' plea agreement without ordering a PSI report or being informed of the dispositions of defendant's prior criminal offenses. 2018 IL App (3d) 170450, ¶ 9.

¶ 16    In response, the State relied on *People v. Haywood*, 2016 IL App (1st) 133201, ¶ 41, which found that the defendant could not challenge his sentence on appeal because his guilty plea and the negotiated plea agreement were still in effect. 2018 IL App (3d) 170450, ¶ 10. In the alternative, the State asserted that section 5-3-1 was complied with because the circuit court had been sufficiently informed of defendant's criminal history and the court could reasonably infer the range of sentences defendant had received for his prior convictions. *Id.*

¶ 17    The appellate court, with one justice dissenting, agreed with defendant, vacated his sentence, and remanded for a new sentencing hearing in strict compliance with section 5-3-1. *Id.* ¶ 1. The court disagreed with *Haywood* and found the PSI requirement of section 5-3-1 is a mandatory legislative requirement that cannot be waived by the defendant. *Id.* ¶ 12.

¶ 18    In December 2018, the State filed a petition for leave to appeal, which we allowed. Ill. S. Ct. R. 315(a) (eff. July 1, 2018).

¶ 19                                    ANALYSIS

¶ 20    This case requires discussion of the doctrines of forfeiture and waiver. Over the years, this court has noted that the terms forfeiture and waiver have, at times, been used interchangeably, and often incorrectly, in criminal cases. *People v. Hughes*, 2015 IL 117242, ¶ 37; *People v. Blair*, 215 Ill. 2d 427, 443 (2005). Forfeiture is defined "as the failure to make the timely assertion of [a] right." *People v. Lesley*, 2018 IL 122100, ¶ 37; see also *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 320 n.2 (2008) (stating "forfeiture is the failure to timely comply with procedural requirements"). Waiver, on the other hand, "is an intentional relinquishment or abandonment of a known right or privilege." *Lesley*, 2018 IL 122100, ¶ 36.

¶ 21    In this appeal, the State has abandoned its arguments made in the appellate court and now argues that defendant forfeited his section 5-3-1 claim, under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), by failing to raise the issue in his postplea motions. We note the State failed to raise the issue of defendant's forfeiture in the appellate court. As the doctrine of forfeiture applies to the State as well as to defendant (*People v. Artis*, 232 Ill. 2d 156, 178 (2009)), the State has

forfeited its ability to raise its argument now on appeal (*People v. McKown*, 236 Ill. 2d 278, 308 (2010)). However, because forfeiture is a limitation on the parties and not the court, we will consider the State's argument. *People v. Custer*, 2019 IL 123339, ¶ 19. A claim of forfeiture raises a question of law, which we review *de novo*. *Id.* ¶ 17.

¶ 22        In the context of guilty pleas, Rule 604(d) states that "[n]o appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Moreover, "[u]pon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived." *Id.*; see also *People v. Evans*, 174 Ill. 2d 320, 329 (1996) ("Any issue not raised in the motion to reconsider or to withdraw the plea shall be deemed waived.").[1]

> " 'A few years after the effective date of our 1970 Constitution, it came to the attention of this court that a large number of appeals in criminal cases were being taken from pleas of guilty. *** A review of the appeals in those cases revealed that many of the errors complained of could and undoubtedly would be easily and readily corrected, if called to the attention of the trial court. The rule was designed to eliminate needless trips to the appellate court and to give the trial court an opportunity to consider the alleged errors and to make a record for the appellate court to consider on review in cases where defendant's claim is disallowed.' " *People v. Tousignant*, 2014 IL 115329, ¶ 13 (quoting *People v. Wilk*, 124 Ill. 2d 93, 106 (1988)).

See also *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009) (stating the "[f]ailure to raise claims of error before the trial court denies the court the opportunity to correct the error immediately and grant a new trial if one is warranted, wasting time and judicial resources"); *People v. Tye*, 323 Ill. App. 3d 872, 886 (2001) (stating a postsentencing motion "serves the important goal of promoting judicial economy

---

[1]Although this aspect of Rule 604(d) has been referred to as the "waiver rule" (*People v. Stewart*, 123 Ill. 2d 368, 374 (1988)), it is more appropriate to "use 'forfeited' to mean issues that could have been raised but were not, and are therefore barred" (*People v. Allen*, 222 Ill. 2d 340, 350 n.1 (2006)).

and finality of judgments by highlighting any alleged error for the circuit court and granting it the opportunity to reconsider the appropriateness of the sentence and to correct any errors made").

¶ 23   Along with allowing the circuit court to immediately correct any errors that may have led to the guilty plea or the length of the sentence, Rule 604(d)

"ensures that fact finding takes place and a record is made at a time when witnesses are still available and memories are fresh. If the motion to withdraw the plea is denied, that decision can be considered on review. If the motion is granted, the need for an appeal has been eliminated." *Evans*, 174 Ill. 2d at 329.

¶ 24   In the case *sub judice*, defendant pled guilty in April 2014, and he had 30 days to file a motion to withdraw his guilty plea and raise any allegations of error. However, defendant did not raise the issue of section 5-3-1 compliance he now argues on appeal in his May 2014 motion to withdraw the guilty plea. He also did not raise the current issue in his October 2014 amended motion to withdraw the guilty plea or in his May 2017 second amended motion to withdraw the guilty plea. In fact, defendant has never raised the issue in the circuit court.

¶ 25   Instead, now more than six years after pleading guilty, defendant seeks a new sentencing hearing based on the circuit court's failure to comply with section 5-3-1, an issue that could have readily been raised and addressed in May 2014. We find defendant long ago forfeited any claim of noncompliance with section 5-3-1 by failing to raise the issue in any of his three motions to withdraw the guilty plea. In the absence of a postplea " 'motion limiting the consideration to errors considered significant, the appeal is open-ended. Appellate counsel may comb the record for every semblance of error and raise issues on appeal whether or not trial counsel considered them of any importance.' " *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (quoting *People v. Caballero*, 102 Ill. 2d 23, 31-32 (1984)). If Rule 604(d)'s requirement that issues be raised in a motion to withdraw the guilty plea or otherwise risk forfeiture is to have any force, defendant's failure to raise the issue within 30 days of the imposition of sentence must be found to be what it is— forfeited.

¶ 26   This court's decision in *People v. Youngbey*, 82 Ill. 2d 556 (1980), does not compel a different result. In that case, the circuit court found the defendants guilty

of unlawful use of weapons. *Id.* at 558. After denying their motions for a new trial, both defendants, as well as the State, waived the PSI report and proceeded to the sentencing hearing. *Id.* at 559. No specific sentence had been agreed to by the parties, and the State presented evidence of the defendants' criminal history. *Id.* The State also requested the court consider verified copies of conviction and represented one of the defendants spent " 'nine days in the House' " for aggravated assault. *Id.* The court sentenced the defendants to prison. *Id.* Two days later, the court, *sua sponte*, held section 5-3-1 of the Code unconstitutional. *Id.*

¶ 27        On appeal, this court found the circuit court erred in declaring section 5-3-1 unconstitutional. *Id.* at 560. This court then went on to consider whether, in the absence of a sentencing agreement, a PSI report is a mandatory requirement in felony cases under section 5-3-1 and, if so, whether such a requirement can be waived by a defendant. *Id.* at 560-61. After examining the language of section 5-3-1, the court held the PSI report "is a mandatory legislative requirement which cannot be waived except in accordance with the exception in the statute." *Id.* at 562.

¶ 28        In contrast to *Youngbey*, the case before us does not involve a similar act of waiver. Instead, it involves defendant's forfeiture of the issue by his repeated failure to raise his claim in the circuit court. The State did not raise a forfeiture argument in *Youngbey*, and this court did not address it. Thus, we find that case distinguishable.

¶ 29        Contrary to the argument raised by Justice Karmeier's dissent, this case is also not controlled by this court's decision in *People v. Harris*, 105 Ill. 2d 290 (1985). There, both defendants were convicted of burglary in separate cases. *Id.* at 294-95. In one case, after being convicted in a bench trial, the defendant, David Harris, waived a PSI report, and the circuit court proceeded to a sentencing hearing and sentenced him to probation. *Id.* at 294. After Harris violated his probation, the court sentenced him to prison. *Id.* On appeal, the appellate court found no error in the circuit court's failure to order a PSI report, concluding Harris voluntarily waived his right to a PSI report when originally placed on probation. *Id.* at 295.

¶ 30        In the other case, the defendant, Raymond Coleman, pleaded guilty and was sentenced to probation. *Id.* Both parties waived the PSI report. *Id.* At a sentencing hearing following Coleman's violation of probation, an "updated" report was filed, but it did not contain any information on his background prior to being placed on

probation. *Id.* at 295-96. The circuit court sentenced him to prison. *Id.* at 296. On appeal, the appellate court reversed, finding the circuit court's failure to consider a PSI report was plain error. *Id.*

¶ 31 In the consolidated appeal, this court considered the question of whether, after revocation of probation, a circuit court must consider a PSI report before sentencing a defendant on a felony conviction. *Id.* at 297. This court held the PSI requirement in section 5-3-1 did indeed apply to resentencing following probation revocation. *Id.* at 299. As one of its arguments, the State contended the defendants waived their right to protest the absence of a PSI report. *Id.* at 301-02. This court, however, found waiver could not be inferred from the defendants' failure to object in their respective cases. *Id.* at 302.

¶ 32 As we found with *Youngbey*, we likewise find *Harris* distinguishable. *Youngbey* involved bench trials, and only one of the defendants in *Harris* pleaded guilty. Waiver was at the heart of those cases, and as we have stated, waiver is different than forfeiture. Here, defendant's failure to raise the section 5-3-1 issue in accord with the requirements of Rule 604(d) goes above and beyond the doctrine of waiver. While defendant Coleman pleaded guilty in *Harris*, this court did not address forfeiture in the context of Rule 604(d), which specifically requires a defendant who pleaded guilty to raise any claims of error or otherwise risk forfeiting those issues on appeal.

¶ 33 Moreover, defendant's act of pleading guilty forecloses any claim of error. "It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, including constitutional ones." *People v. Townsell*, 209 Ill. 2d 543, 545 (2004); see also *People v. Jackson*, 199 Ill. 2d 286, 295 (2002) (finding "that by a guilty plea a criminal defendant does waive *Apprendi*-based sentencing objections on appeal"); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Defendant entered into a negotiated plea agreement, pleading guilty to one count of first degree murder in exchange for the State's recommendation of an aggregate sentence of 55 years in prison and the dismissal of the remaining charges. Despite his attorney's stated willingness to take the case to trial, defendant persisted in taking the plea deal. To grant relief in this case would give defendant a second bite at the apple, well beyond the applicable time constraints of Rule 604(d), in his quest for a new hearing on his sentence, one that he voluntarily agreed to. Given that he waived all

nonjurisdictional errors by pleading guilty, defendant should not be rewarded after standing silent all these years.

¶ 34                                    CONCLUSION

¶ 35        As defendant forfeited his claim by failing to raise it in his postplea motions and waived any error by pleading guilty, we find the appellate court erred in considering the merits of his claim and in granting him a new sentencing hearing. Accordingly, we reverse the appellate court's judgment and affirm the circuit court's judgment.

¶ 36        Appellate court judgment reversed.

¶ 37        Circuit court judgment affirmed.

¶ 38        CHIEF JUSTICE ANNE M. BURKE, specially concurring:

¶ 39        In the case at bar, defendant pled guilty, pursuant to a fully negotiated plea agreement, to one count of first degree murder in exchange for the dismissal of all remaining criminal charges pending against him and a sentence of 55 years' imprisonment.[2] Because a specific sentence was agreed to by the parties, the parties waived a presentence investigation report (PSI), and the circuit court sentenced defendant in accord with the plea agreement after considering defendant's criminal history.

¶ 40        Defendant later moved to withdraw his guilty plea, which the circuit court denied. On appeal from that denial, defendant argued that he was entitled to a new sentencing hearing because the circuit court failed to strictly comply with section 5-3-1 of the Unified Code of Corrections (Code) (730 ILCS 5/5-3-1 (West 2012)) when it sentenced defendant in accord with the parties' plea agreement without ordering a PSI report or being informed of the dispositions of defendant's prior criminal offenses. 2018 IL App (3d) 170450, ¶ 9.

---

[2]The 55-year sentence consisted of a 30-year sentence for the offense of first degree murder plus the 25-year mandatory firearm enhancement (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2012)).

¶ 41    The appellate court agreed that the circuit court had not strictly conformed to section 5-3-1 of the Code, finding that "no information whatsoever was presented as to the dispositions defendant received in his prior criminal cases." *Id.* ¶ 14. The appellate court remanded for a new sentencing hearing "so that the trial court can be informed of defendant's history of delinquency and criminality before it determines whether the agreed-upon sentence is appropriate." *Id.*

¶ 42    Now, a majority of this court, applying principles of waiver and forfeiture, finds that defendant is not entitled to a new sentencing hearing and reverses the appellate court judgment. Although I agree that the appellate court judgment must be reversed, my reasoning differs from that of the majority. In my view, defendant is not entitled to a new sentencing hearing because the circuit court's failure to strictly comply with section 5-3-1 of the Code was harmless error under the circumstances of this case.

¶ 43    Since 1978, section 5-3-1 of the Code has provided:

"A defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court.

    However, *** the court need not order a presentence report of investigation where both parties agree to the imposition of a specific sentence, provided there is a finding made for the record as to the defendant's history of delinquency or criminality, including any previous sentence to a term of probation, periodic imprisonment, conditional discharge, or imprisonment." 730 ILCS 5/5-3-1 (West 2012) (recodified from Ill. Rev. Stat. 1979, ch. 38, ¶ 1005-3-1).

See also Pub. Act 80-1099, § 3 (eff. Feb. 1, 1978).

¶ 44    Prior to 1978, this section of the Code permitted a defendant to waive a PSI at any time. See *People v. Youngbey*, 82 Ill. 2d 556, 561 (1980). The statute was amended, as Representative Getty explained in the House debates of May 19, 1977, because requiring a PSI

"would *** bring an end to the unfortunate system where we have people placed on probation, placed on probation and placed on probation again. Sometimes only the defendant knows he's already on probation. This would bring that sort of thing to an end so a Judge would know when he makes his

sentence that a man is already on probation." 80th Ill. Gen. Assem., House Proceedings, May 19, 1977, at 106 (statements of Representative Getty).

See also *Youngbey*, 82 Ill. 2d at 564.

¶ 45    With the 1978 amendment, the legislature made obtaining a PSI "a mandatory legislative requirement which cannot be waived *except in accordance with the exception in the statute*." (Emphasis added.) *Id.* at 561. If the exception must apply before a PSI can be *knowingly* waived, it is counterintuitive to find that the PSI requirement can be forfeited. Thus, I find, as we did in *Youngbey*, that the PSI requirement is mandatory and can be neither waived nor forfeited, unless there is compliance with the statutory exception. In this case, the parties waived the PSI, but the waiver was inoperative because the circuit court made no finding for the record as to "defendant's history of delinquency or criminality, including any previous sentence to a term of probation, periodic imprisonment, conditional discharge, or imprisonment."

¶ 46    Of course, finding that the circuit court erred does not necessarily mean that remand for a new sentencing hearing is required. In this case I would find the error to be harmless.

¶ 47    Defendant pled guilty on April 24, 2014, to the November 4, 2013, shooting death of his estranged wife, Laongdao Phangthong. The record shows that after hearing a factual basis for the plea the court gave both defendant and his counsel the opportunity to dispute the facts as presented by the State but that neither did so. In fact, counsel agreed that evidence obtained in discovery supported the factual basis recited by the State. Accordingly, the court pronounced defendant guilty of first degree murder and proceeded to sentencing.

¶ 48    Prior to imposing sentence, the court asked about defendant's criminal record. The State responded, "Your Honor, we would refer the Court to the pre-trial services criminal history filed November 18th, 2013. That is an accurate reflection of his criminal history." When the court could not find that document in the file, the State responded, "I can recite it, Judge. It is fairly short." The State then informed the court that defendant's criminal history consisted of a 2004 conviction for the manufacture and delivery of cannabis and two traffic offenses—speeding and not wearing a seatbelt. The court then remarked, "Obviously the State has made

- 12 -

a thorough investigation and believes the agreement and sentence that is imposed here is in the best interest of justice." The State agreed. Although defendant expressed some disappointment with the 30-year sentence for murder—which is 10 years over the minimum—he was adamant that, nevertheless, he wanted to accept the plea agreement.

¶ 49 Under the circumstances outlined above, I would find that that the circuit court's failure to comply with the requirements of section 5-3-1 of the Code was harmless. The parties agreed to a particular sentence, and the court was fully aware of facts giving rise to the plea, as well as defendant's criminal history. While it is true that the circuit court made no finding on the record regarding the dispositions that had been imposed for defendant's prior convictions, it is impossible to believe that any dispositions imposed on a nearly 10-year-old cannabis conviction and two traffic offenses would have had any significant impact on the court's assessment of the appropriate sentence in this first degree murder case.

¶ 50 For the above reasons, I would reverse the appellate court judgment and affirm the circuit court's denial of defendant's motion for a new sentencing hearing.

¶ 51 JUSTICE KARMEIER, dissenting:

¶ 52 I like the result the majority reaches and would like to join them. It is a simple resolution; it is clean; it ends the litigation efficiently; however, it does so at the expense of reaching a desired result in the face of a statute that does not permit that result. Accordingly, I must respectfully dissent.

¶ 53 Pursuant to forfeiture principles and Rule 604(d), generally, "any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). This rule, however, is not ironclad and is relaxed under appropriate circumstances. One such common circumstance is plain error. *People v. Fuller*, 205 Ill. 2d 308, 323 (2002); *People v. Davis*, 145 Ill. 2d 240, 251 (1991) ("Although this court overruled *Adkisson*, it was because the trial court's error [did not amount] to [plain] error, and not because an exception was not available to Rule 604(d)."); *People v. Walker*, 109 Ill. 2d 484, 497 (1985).

¶ 54 This case presents another—unique and limited—circumstance that requires relaxation of defendant's forfeiture. This is so because, in *Youngbey*, this court determined that section 5-3-1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, ¶ 1005-3-1 (now 730 ILCS 5/5-3-1)) does not provide a personal right to defendants that can be waived. *People v. Youngbey*, 82 Ill. 2d 556, 565 (1980). Instead, it imposes a mandatory obligation on the trial court, under the mandatory-directory dichotomy, that cannot be waived. *Id.* at 564.

¶ 55 The mandatory-directory dichotomy concerns the consequences of a governmental entity's failure to fulfill an obligation. *People v. Robinson*, 217 Ill. 2d 43, 52 (2005). When a statute is found mandatory under this dichotomy, noncompliance renders the subsequent action to which the statutory requirement relates invalid.[3] *Id.* at 51-52. Accordingly, this court has repeatedly addressed issues involving mandatory statutes, and adhered to the consequences specified by such statutes in cases of noncompliance, despite a party's forfeiture. *People v. Hardman*, 2017 IL 121453, ¶ 49; *People v. Love*, 177 Ill. 2d 550, 556 (1997) ("The trial court's failure to adhere to the procedural safeguards mandated by section 113-3.1 [of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-3.1 (West 1994))] requires vacatur of the reimbursement order, despite defendant's failure to object."); *People v. Partee*, 125 Ill. 2d 24 (1988) (although the issue was not raised in the trial court (*People v. Partee*, 153 Ill. App. 3d 841, 844 (1987)), this court addressed whether a defendant can waive the trial court's violation of the mandatory requirements prescribed by section 113-4(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, ¶ 113-4(e))); *People v. Porter*, 122 Ill. 2d 64, 84 (1988) (vacating the trial court's dismissal of a postconviction petition for its failure to adhere to the mandatory requirements of section 122-2.1(b) of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, ¶ 122-2.1(b)), although issue was apparently not raised in appellate court (*People v. Porter*, 141 Ill. App. 3d 208 (1986))); *People v. Singleton*, 103 Ill. 2d 339, 346 (1984) (declining to apply

[3]This is not to be confused with the mandatory-permissive dichotomy, which addresses whether the trial court has an obligatory duty or the discretionary power to perform a legislative directive. *People v. Delvillar*, 235 Ill. 2d 507, 514 (2009). Under the principles of both dichotomies, a statute could be mandatory, in that the trial court has no discretion to ignore the directive, but noncompliance nevertheless does not require automatic relief absent prejudice. *Id.* at 519. Yet, if mandatory under a mandatory-directory dichotomy, the duty is necessarily mandatory under both dichotomies, and the governmental action to which the requirement relates is invalid. *Robinson*, 217 Ill. 2d at 51-52.

forfeiture to an argument that the trial court violated a mandatory provision by sentencing defendant to consecutive terms, rather than concurrent terms).

¶ 56    Here, it is undisputed that the trial court failed to comply with the mandatory requirements of section 5-3-1. Consequently, the trial court's acceptance and imposition of the agreed-upon sentence is invalid, and the cause must be remanded for compliance with section 5-3-1. *People v. Harris*, 105 Ill. 2d 290, 300-03 (1985).

¶ 57    In an attempt to reconcile its opinion with our precedent, the majority finds *Youngbey* and *Harris* inapposite because they involve waiver, not forfeiture. This reasoning not only misapprehends the mandatory nature of section 5-3-1, it misconstrues *Harris*. *Id.*

¶ 58    Although the term "waiver" was used in *Harris*, the substance of the State's argument in that case clearly asserted that the defendants forfeited the trial court's section 5-3-1 error. It contended that the defendants "waived" the error because they failed to object during the trial court proceedings. *Id.* at 301-02.[4] The root of this contention was not that the defendants somehow intentionally relinquished the requirements of section 5-3-1 but that they could have raised the issue earlier in the trial court. Under the majority's own definition of the term, this is a claim of forfeiture. *Supra* ¶ 20. ("Forfeiture is defined 'as the failure to make the timely assertion of [a] right.' " (quoting *People v. Lesley*, 2018 IL 122100, ¶ 37)).[5]

¶ 59    While defendant here forfeited his argument pursuant to Rule 604(d), rather than by failing to object at trial, *Harris* nevertheless controls this case. Because the rule codifies a well-established legal term of art stemming from common law— absent an intent to the contrary—it encompasses all the legal ramifications of that term, including that forfeiture is relaxed under appropriate circumstances. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 305 (2010); *People v. De La Paz*, 204 Ill. 2d 426, 432 (2003). Despite the majority's contention otherwise, Rule 604(d) lacks any indication that it involves a more stringent version

---

[4]The State presented other arguments involving waiver or the intentional relinquishment of a right. My discussion, however, is limited only to the portion of *Harris* that discusses "waiver" based on defendants' failure to object in the trial court proceedings.

[5]Interestingly, the majority recognizes and clarifies the same confusion in the context of Rule 604(d) but then overlooks the distinction in *Harris*. *Supra* ¶ 22 n.1 (explaining that, although Rule 604(d) uses the term "waived," it is more appropriate to use the term "forfeited" because the provision regards issues that could have been raised but were not).

of forfeiture or an intent to depart from the common-law rule of forfeiture and its exceptions. The rule simply restates the general principle of forfeiture without stipulations. In fact, the purposes behind this provision—to promote judicial economy and fairness to the parties—are the same purposes underlying the general rules of forfeiture in any case. Compare *People v. Adkisson*, 83 Ill. 2d 1, 7-8 (1980), with *People v. Lampkin*, 98 Ill. 2d 418, 436 (1983). Consequently, once *Harris* was filed, our holding that section 5-3-1 is not subject to forfeiture became part of the law, even in the context of Rule 604(d). *Moon v. Rhode*, 2016 IL 119572, ¶ 33.

¶ 60  Moreover, it is incongruous to apply forfeiture when a defendant cannot waive the requirement. See *Harris*, 105 Ill. 2d at 302; *Freytag v. Commissioner*, 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring in part and concurring in the judgment, joined by O'Connor, Kennedy, and Souter, JJ.) ("A right that cannot be waived cannot be forfeited by other means (at least in the same proceeding), but the converse is not true."). Simply because there are differences between waiver and forfeiture does not mean the concepts are wholly disconnected. Waiver requires an intentional act. In contrast, forfeiture may occur regardless of a party's intent. *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005).[6] The consequence of relinquishing a right, however, occurs in both instances.

¶ 61  In light of this similarity, it is clear that applying forfeiture here conflicts with the legislative intent underlying section 5-3-1. In enacting section 5-3-1, the legislature intended to ensure courts impose meaningful sentences by requiring the sentencing judge to have all the necessary information regarding a defendant and defendant's criminal history, including any disposition as to any convictions, before imposing the sentence. *Youngbey*, 82 Ill. 2d at 565; *Harris*, 105 Ill. 2d at 304. By subsequently amending section 5-3-1 in 1978 to remove defendant's ability to

---

[6]The definitions and consequences of "waiver" and "forfeiture" have been a point of confusion for both parties and courts. In *Blair*, this court attempted to clarify the terms. In doing so, it oversimplified the interplay between waiver and forfeiture. See *Blair*, 215 Ill. 2d 427. Waiver, being an intentional relinquishment of a right or privilege, "is merely one means by which a forfeiture may occur. Some rights may be forfeited by means short of waiver." *Freytag*, 501 U.S. at 895 n.2 (Scalia, J., concurring in part and concurring in the judgment, joined by O'Connor, Kennedy, and Souter, JJ.). For example, "procedural default refers to the failure to adequately preserve an issue for later appellate review" (*Blair*, 215 Ill. 2d at 457 n.3 (Freeman, J., dissenting, joined by McMorrow and Kilbride, JJ.)), which also results in the forfeiture of defendant's right to raise that error on appeal (*id.* at 444 n.2 (majority opinion)). Because the majority equates procedural default with forfeiture, I do the same.

waive the requirements, the legislature indicated that the importance of this public policy necessitates strict compliance, such that defendant could not hinder the public policy by waiving it. *Youngbey*, 82 Ill. 2d at 563; *Harris*, 105 Ill. 2d at 304.[7]

¶ 62     Forfeiture, like the effect of a waiver, would also stifle this public policy. Considering that parties often fail to timely assert their rights, it is arguable the application of forfeiture presents the greater risk of nullifying the mandatory requirements. As such, to effectuate the legislature's intent, neither waiver nor forfeiture can impede the public policy of ensuring meaningful sentences.

¶ 63     The majority further overlooks the irrational result of its conclusory assertion that forfeiture applies because it differs from waiver. Under its reasoning, a party may unintentionally forgo the mandatory requirements of section 5-3-1 by failing to timely assert them, despite the legislature's determination that the public policy underlying the provision is so imperative that no party may intentionally forgo the requirements. This conclusion is nonsensical, as it would place consequences that the legislature prohibited for an intentional action on a less culpable inaction. The legislature could not have intended such an absurd result. *People v. Clark*, 2019 IL 122891, ¶ 20 (courts presume that the legislature did not intend absurd results).

¶ 64     Accordingly, where the trial court failed to comply with the mandatory requirements of a statute that cannot be waived and the case is properly before this court on direct appeal, the application of forfeiture is not appropriate. See *Hardman*, 2017 IL 121453, ¶ 49; *Harris*, 105 Ill. 2d at 302; *Singleton*, 103 Ill. 2d at 346; *People v. Evans*, 273 Ill. App. 3d 252, 256-57 (1994).

¶ 65     The fact that this case involves a guilty plea rather than sentencing after a trial is of no consequence. Unlike the errors and constitutional rights that are waived by a voluntary guilty plea, section 5-3-1 provides mandatory requirements that—not being a personal right to defendant—are not subject to waiver except in accordance with the statute. *Youngbey*, 82 Ill. 2d at 561-62; *Harris*, 105 Ill. 2d at 304.

---

[7] Prior to 1978, section 5-3-1 specifically provided that "The defendant may waive the presentence investigation and written report." Ill. Rev. Stat. 1977, ch. 38, ¶ 105-3-1. The 1978 amendment removed this sentence. Consequently, this court found section 5-3-1 is for the enlightenment of the court and, not being a personal right of the defendant, cannot be waived. *Youngbey*, 82 Ill. 2d at 564-65.

Therefore, absent compliance with section 5-3-1, defendant has no ability to waive section 5-3-1 requirements by any means, including pleading guilty.

¶ 66    The majority's contrary decision departs from precedent and allows an invalid action to stand despite the legislature's unambiguous directive otherwise. "We are not free to ignore the requirements set forth by the General Assembly in constitutionally valid legislation." *People ex rel. Department of Public Health v. Wiley*, 218 Ill. 2d 207, 228-29 (2006).[8]

¶ 67    For similar reasons, the special concurrence's argument that a new sentencing hearing is not required where the court's noncompliance results in harmless error is equally unavailing. In *Harris*, the State posited a similar argument that defendants were not entitled to a new sentencing hearing because there was substantial compliance based on the fact that the trial courts were aware of all the relevant information before imposing the sentences. *Harris*, 105 Ill. 2d at 302-03. This court rejected the State's argument and found that, due to the mandatory nature of the statute, section 5-3-1 was a *per se* rule. *Id.* at 303. Consequently, we cannot depart from the plain language of section 5-3-1—which explicitly provides the sole exception to the presentence investigation report requirement—because the error is perceived as harmless. See *People v. Ramirez*, 214 Ill. 2d 176, 183 (2005) (this court determined, because section 115-4.1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-4.1(a) (West 1992)) was mandatory, it is "constrained to apply the plain language as written and without exception," including harmless error review).

¶ 68    The majority and special concurrence mistakenly center their analyses around defendant's actions or the consequences of the trial court's error on defendant. While defendant may benefit from section 5-3-1, its primary intent is to be a useful tool for the sentencing judge to ensure the court imposes a meaningful sentence that serves society's best interest. *Youngbey*, 82 Ill. 2d at 565; *Harris*, 105 Ill. 2d at 304. As such, the legislature's principal objective was not to protect defendants but to protect society from the lenient treatment of defendants who lack rehabilitative potential. 80th Ill. Gen. Assem., House Proceedings, May 19, 1977, at 106

---

[8] In *Youngbey*, this court found section 5-3-1 does not constitute an unconstitutional encroachment upon either the judicial or executive powers. *Youngbey*, 82 Ill. 2d at 560.

(statements of Representative Getty) (Representative Getty hoped the removal of the ability to waive the requirements of section 5-3-1 would end "the unfortunate system" where people are repeatedly placed on probation because no one knew of the defendant's history).

¶ 69      This public policy is particularly germane in the context of fully negotiated pleas, where the State and the defendant often find it advantageous to agree upon a lesser penalty than might be imposed if there were a guilty verdict after a trial. *Brady v. United States*, 397 U.S. 742, 752 (1970) (explaining the mutual advantages of plea deals). Yet, what is advantageous to the State and defendant does not always serve society's best interests. This is why, even where the parties agree to a sentence, it remains the sentencing court's responsibility to determine whether the sentence is acceptable. Ill. S. Ct. R. 402(d)(2) (eff. July 1, 2012). Section 5-3-1 provides not only information relevant to defendant's rehabilitative potential, both in mitigation and aggravation, but also serves as a verification of that information for the court before it decides to impose the parties' agreed-upon sentence. *Harris*, 105 Ill. 2d at 302. It thus forms an important protection against a court blindly accepting the parties' agreed-upon sentence that may not correspond with society's interests because it is either too lenient or harsh. *E.g.*, *People v. Lambrechts*, 69 Ill. 2d 544, 558 (1977) ("It does not seem to us unusual that a judge, viewing that record, would be concerned as to whether society's best interests were being served by the lenient treatment received by defendant in connection with his eight prior convictions ***.").

¶ 70      Defendant's failure to preserve this issue or the unlikeliness of any resulting harm in this case does not diminish the legislature's purpose underlying section 5-3-1 to protect the public or somehow relieve the court of its mandatory obligations. Therefore, the focus of the inquiry should be solely whether the trial court complied with this societal safeguard.

¶ 71      Because there is no forfeiture, the underlying substantive issue decided below of whether defendant may seek a new sentencing hearing based on a section 5-3-1 error without a separate basis to withdraw his plea remains. Although the State and defendant now agree on this issue, there is a conflict between appellate court districts, and resolution of the question is pivotal to the relief herein provided by the appellate court. Thus, in the interest of maintaining a sound and uniform body

of precedent, this court should nevertheless address it. *People v. Medina*, 221 Ill. 2d 394, 402 (2006).

¶ 72 The appellate split was created by the First District in *Haywood*, where it declined to address a section 5-3-1 noncompliance argument absent a successful motion to withdraw guilty plea because, based on contract principles, a defendant may not seek to unilaterally reduce his sentence while the State is bound to its part of the agreement. *People v. Haywood*, 2016 IL App (1st) 133201, ¶ 41 (citing *People v. Evans*, 174 Ill. 2d 320, 327, 332 (1996)). On the other hand, the majority of appellate districts characterize a section 5-3-1 noncompliance argument as a challenge to the trial court's *approval* of the sentence, rather than an attack on the sentence. *People v. Walton*, 357 Ill. App. 3d 819 (2005); see *People v. Bryant*, 2016 IL App (5th) 140334; *Evans*, 273 Ill. App. 3d 252 (1994); 2018 IL App (3d) 170450. I agree with the latter view.

¶ 73 As explained above, in the context of fully negotiated pleas, section 5-3-1 requires the court to comply with certain mandatory requirements before imposing the parties' agreed-upon sentence. The provision does not directly relate to the sentence, itself. Nothing in the statute indicates or directs the court to impose a certain sentence or to consider certain sentencing factors in its decision. Instead, the provision regards only a presentencing procedure that the trial court must follow before it can carry out its duty to impose or deny the agreed-upon sentence. *Youngbey*, 82 Ill. 2d at 560.

¶ 74 As such, section 5-3-1 provides no basis to reduce defendant's sentence. A remand on this basis only affords the trial court an opportunity to fulfill its mandatory obligation, which is required to validly accept the agreed-upon sentence.

¶ 75 The possibility that a trial court may reject the agreed-upon sentence after compliance with section 5-3-1 on remand, which would then afford defendant the ability to withdraw his plea, does not fly in the face of contract principles or fundamental fairness. To the contrary, it comports with such principles because no party can unilaterally change the terms of the plea agreement. *People v. Whitfield*, 217 Ill. 2d 177, 190 (2005). The decision to rescind the plea agreement hinges on the trial court's decision to reject the agreed-upon sentencing term, and therefore the agreement itself, after it has complied with the mandatory requirements of section 5-3-1. See *Evans*, 174 Ill. 2d at 332 ("the guilty plea and the sentence 'go

hand in hand' as material elements of the plea bargain"). As the State highlights, this will not offend contract principles "because the parties are either held to the terms of the agreement or returned to the status quo as it existed prior to the acceptance of the plea."

¶ 76    Thus, defendant may assert a section 5-3-1 noncompliance argument and seek a new sentencing hearing without providing another successful basis to withdraw his plea, as it is an attack on the validity of the court's acceptance of the plea rather than an excessive sentence challenge.

¶ 77    For these reasons, I dissent. The appellate court judgment should be affirmed and the case remanded to the trial court for a new sentencing hearing where the court can reconsider the agreed-upon sentence after complying with the requirements of section 5-3-1.


¶ 78    JUSTICE NEVILLE, dissenting:

¶ 79    I agree with Justice Karmeier that defendant is entitled to a new sentencing hearing because the circuit court failed to comply with the mandatory statutory requirements set forth in section 5-3-1 of the Unified Code of Corrections (730 ILCS 5/5-3-1 (West 2012)). I write separately to emphasize my concerns about the majority's use of the forfeiture doctrine to decide the issue in this appeal.

¶ 80    Defendant's argument challenges the circuit court's noncompliance with the terms of section 5-3-1 and contests the court's ability to impose sentence in the absence of a presentence investigation report (PSI report) where the requirements for the exception have not been satisfied.

¶ 81    As Justice Karmeier explains, the requirement of a PSI report cannot be waived unless the statutory exception set forth in section 5-3-1 has been satisfied. *People v. Youngbey*, 82 Ill. 2d 556, 564-65 (1980). The purpose of section 5-3-1 is to mandate that the sentencing judge acquire all relevant information about defendant's prior criminal history—including the disposition of previous convictions—before a sentence is imposed. *Id.* at 564; *People v. Harris*, 105 Ill. 2d 290, 299 (1985). Here, the circuit court's noncompliance with the mandate in section 5-3-1 denied defendant due process, a fair sentencing hearing (*People v.*

*Hall*, 198 Ill. 2d 173, 177 (2001) (recognizing that fairness is the core meaning of due process)), because it contravened the express terms of the statute. See *Youngbey*, 82 Ill. 2d at 564-65; *Harris*, 105 Ill. 2d at 303. The majority's affirmance of the circuit court's failure to comply with the mandate in section 5-3-1 undermines its purpose of having an enlightened trial judge impose the sentence and serves to thwart the public policy underlying the statute. See *Youngbey*, 82 Ill. 2d at 564-65.

¶ 82 Further, like Justice Karmeier and Chief Justice Burke, I disagree with the majority's analysis because it leads to an incongruous result. In my view, the legislature could not have intended that a criminal defendant is precluded from knowingly and deliberately waiving the mandatory requirement of a PSI report without satisfying the statutory exception but could do so inadvertently through forfeiture. See *Harris*, 105 Ill. 2d at 302 (recognizing that, if an express waiver is invalid under the statute, waiver—or forfeiture—cannot be inferred from the defendants' failure to object). Consequently, I cannot concur in the majority's holding that defendant must be denied a new sentencing hearing because he failed to assert his section 5-3-1 claim in the circuit court.

¶ 83 To reach that conclusion, the majority has ignored the plain language of section 5-3-1, which provides that "[a] defendant *shall not* be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court" where the statutory exception has not been satisfied. (Emphasis added.) 730 ILCS 5/5-3-1 (West 2012). In doing so, the majority nullifies the mandatory nature of the PSI report requirement and renders it merely aspirational and a matter of discretion for the sentencing judge.

¶ 84 Moreover, as the majority acknowledges, the State failed to raise the issue of defendant's forfeiture of his section 5-3-1 claim in the appellate court and asserts it for the first time in its briefs before this court. Nevertheless, the majority proceeds to consider the State's forfeited argument by relying on the maxim that forfeiture is a limitation on the parties and not on the court.

¶ 85 In considering the State's argument regarding defendant's forfeiture, the majority points out that " '[u]pon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived.' " *Supra* ¶ 22 (quoting Ill. S. Ct. R. 604(d) (eff.

July 1, 2017)). Further, the majority states that, "[i]f Rule 604(d)'s requirement that issues be raised in a motion to withdraw the guilty plea or otherwise risk forfeiture is to have any force, defendant's failure to raise the issue within 30 days of the imposition of sentence must be found to be what it is—forfeited." *Supra* ¶ 25.

¶ 86 The majority does not rely on the maxim that forfeiture is a limitation on the parties and not the court when considering defendant's forfeiture. In addition, the majority does not address Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), which provides that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.

¶ 87 Even more troubling is the fact that the majority excuses the State's forfeiture but then resolves this appeal against defendant *solely* on the ground that he forfeited his section 5-3-1 claim. It is axiomatic that an issue that is not raised in a timely manner is subject to forfeiture—also referred to as procedural default. See *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005) (distinguishing between waiver and forfeiture). Also, this court has repeatedly held that the forfeiture doctrine is applicable to the State as well as the defendant in criminal proceedings and that the doctrine may be enforced against the State if it fails to timely argue that the defendant has forfeited an issue. *People v. Artis*, 232 Ill. 2d 156, 178 (2009); *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003); *People v. Williams*, 193 Ill. 2d 306, 347 (2000). But it should be noted that, although the forfeiture doctrine was applicable, it was not enforced against the State in this appeal.

¶ 88 The majority offers no principled reason for excusing the State's forfeiture but not that of defendant. Indeed, the majority's opinion puts forth no explanation at all for its unequal invocation of the forfeiture doctrine in this case. This approach grants the State the advantage of having its forfeited argument considered while defendant's similarly forfeited argument is ignored—essentially putting a thumb on the scales of justice in favor of the State and against defendant. I believe that this court has a duty to promote the consistent and evenhanded application of legal doctrines and principles, which serves to promote the fair and equal administration of justice. By its disparate application of the forfeiture doctrine in this case, the court has breached its fundamental duty to ensure that the law is administered equally and fairly.

¶ 89 Lastly, the majority ignores article I, section 11, of the Illinois Constitution, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. In my view, it should be recognized as a fundamental precept that a court cannot know how to restore the defendant to useful citizenship without knowing the defendant's background. I find, since defendant had a constitutional right to be restored to useful citizenship, the circuit court had a duty to comply with the mandatory requirement of section 5-3-1 and inform itself about the defendant's criminal background. See *Youngbey*, 82 Ill. 2d at 565 (holding that this court "cannot say that a trial judge will be sufficiently apprised of the defendant's criminal record in the absence of the mandatory presentence investigation and report").

¶ 90 As a final point, I must respectfully disagree with the view expressed by Chief Justice Burke that the failure to comply with section 5-3-1 in this case amounts to harmless error. In my view, the imposition of a prison sentence of 55 years, which fairly can be characterized as a *de facto* life term, is not an inconsequential act. And a circuit court's imposition of a 55-year sentence without being fully informed of all relevant factors and circumstances, as required by section 5-3-1, cannot be considered harmless. The imposition of a murder sentence that is 10 years longer than the minimum sentence for that offense may be justified under certain circumstances, but there is no way for this court to know whether the circuit court judge would have imposed that same sentence if the dispositions of defendant's prior convictions had been presented as statutorily required. The whole point of requiring a PSI report is to ensure that the sentencing judge has the necessary information to make a fully informed decision. See *id.* at 564. The requirements set forth in the statutory exception to section 5-3-1 further that goal, and enforcement of the forfeiture doctrine against defendant here is unfair and nullifies the statute's PSI report requirement.

¶ 91 For all of the reasons expressed above, I believe this court should remand the cause to the circuit court for a new sentencing hearing at which the disposition of defendant's prior convictions is affirmatively presented to and considered by the sentencing judge. Consequently, I respectfully dissent.