**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210526-U

Order filed January 31, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0526 Circuit No. 16-CF-201 |
| | ) | |
| MARCUS S. SHOCKLEY JR., | ) ) | Honorable Katherine S. Gorman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The court did not err by dismissing defendant's postconviction petition at the first stage.

¶ 2     Defendant, Marcus S. Shockley Jr., appeals the first stage dismissal of his postconviction petition. He argues that he stated the gist of a claim that (1) counsel provided ineffective assistance by advising him to accept a plea agreement, and (2) his *de facto* life sentence violates the proportionate penalties clause of the Illinois Constitution. We affirm.

¶ 3                          I. BACKGROUND

¶ 4          On November 30, 2016, defendant pled guilty to first degree murder (720 ILCS 5/9-

1(a)(2) (West 2016)) in exchange for an agreed sentence of 43 years' imprisonment. The court

confirmed with defendant that he was in agreement with the plea and signed the guilty plea form.

Defendant did not have any questions about the plea agreement. Defense counsel had previously

read the guilty plea form to defendant. In that regard, defense counsel noted that defendant had

been examined, had an intelligence quotient (IQ) of approximately 62, completed the ninth grade

and had been in special education classes. Further, that defendant represented to counsel that he

could read. The State noted that defendant had previously been examined and that it was

determined that he had the ability to exercise his rights and knowingly and voluntarily waive his

*Miranda* rights such that there were no issues with capacity. Defense counsel stated that there

was not an issue with capacity but that he read the documents to defendant "to make sure that he

fully understood what our agreement is." The court confirmed with defendant that he was

satisfied with his attorney's services.

¶ 5          The State then provided the factual basis for the plea. The victim was defendant's

approximately four-month-old son, M.S. The State noted that M.S.'s mother, Shanterryona

Anderson, would testify that on March 7, 2016, defendant engaged in a physical altercation with

her. When Shanterryona left for work that day, she asked her brother Terry Anderson to watch

M.S. and he agreed. When Shanterryona left the house, M.S. had no marks or bruises on him.

When she arrived home from work at approximately 3 p.m., M.S. had bruises on his face and

defendant told Shanterryona that he dropped M.S. Terry would testify that after Shanterryona

left, he and defendant played video games. When M.S. started crying Terry attempted to check

on him, but defendant shoved Terry and told him he would check on M.S. Terry heard M.S.

crying, then four thuds and then M.S. stopped crying. Defendant told Terry he dropped M.S. but M.S. was fine and sleeping. Defendant left and Terry found M.S. lying on the bed. M.S. had a knot on his forehead and bruising and swelling on his face and neck. Defendant returned and told Terry to leave. Medical personnel would testify that M.S. had bruising to both ears, upper and lower lip, neck, cheeks, eyes, temples, upper chest, buttocks, right thigh, and left shoulder. M.S. had visible teeth marks on his shoulder. M.S. had a traumatic brain injury consistent with nonaccidental trauma. M.S. was declared brain dead on March 10, 2016. M.S.'s cause of death was blunt force trauma inconsistent with a fall. A detective would testify that in an interview, defendant initially stated he dropped M.S. but eventually demonstrated with a doll how he tossed M.S. on a bed, forcefully slapped him, and bit him.

¶ 6        The court inquired if defense counsel agreed that the State's factual basis was consistent with the discovery he had been provided and counsel agreed. Counsel also noted that during a prior motion hearing the court had an opportunity to observe defendant's demonstration of what he did to M.S. Defense counsel confirmed that it appeared the State would be able to prove defendant guilty beyond a reasonable doubt and defendant agreed. The court then inquired as to defendant's criminal history. The State noted two juvenile matters and one adult conviction for which he was on probation at the time of the murder. The parties agreed that the sentencing range was 20 to 100 years' imprisonment. After confirming that defendant understood the sentencing range, the court noted that the question that remained was whether it would accept the plea agreement. The court advised defendant of his rights and confirmed he was giving up those rights and pleading guilty. As to the fact that defendant was on probation, the State noted that it took that into account when it reached the agreement and that defendant was "getting a little bit more because of his prior probation, but [the State] took into account a lot of different

3

circumstances, including the defendant's age and circumstances." The court responded that it did not "think 43 years is enough. I think it should be a higher number than that." The court then noted that the State and the defense knew the case better and that it would accept defendant's plea as knowingly, understandingly, and voluntarily made.

¶ 7    Defense counsel filed a motion and amended motion to withdraw guilty plea, alleging that defendant felt compelled to plead guilty because the State sought to introduce gruesome evidence at trial, defendant had a viable defense of involuntary manslaughter, defendant did not intend to kill M.S., defendant's low IQ may have caused a misapprehension of the law regarding the difference between murder and involuntary manslaughter, and the ends of justice are better served by allowing the matter to go to trial because the issue of whether defendant's acts created a strong probability of death or great bodily harm was a question of fact.

¶ 8    At the hearing on the motion, defense counsel presented defendant's psychiatric evaluation. The evaluation showed that defendant had a mild intellectual disability, an IQ between 62 and 75, moderate major depressive disorder, and synthetic cannabis use disorder. Additionally, defendant testified that he sought to withdraw his plea because he felt he could receive less prison time. Defendant admitted on cross-examination that he knew his actions might cause great bodily harm to M.S. Defendant also testified that defense counsel visited him numerous times to discuss the case and his options. He decided to plead guilty because the State indicated that the deal it offered was all that it was going to offer and there would be no more negotiations. After arguing in support of the motion, and upon questioning by the court whether counsel was saying defendant had a meritorious defense, counsel stated that there was a nonfrivolous argument that could be made but that it probably would not succeed. The court

4

denied the motion. Defendant appealed. This court affirmed and allowed counsel's motion to withdraw. *People v. Shockley*, No. 3-17-0080 (2019) (unpublished dispositional order).

¶ 9 Defendant ultimately filed, as a self-represented litigant, a postconviction petition. As relevant to this appeal, the petition argued that defense counsel provided ineffective assistance by advising him to accept a *de facto* life sentence which violated the proportionate penalties clause of the Illinois Constitution and that his 43-year sentence, for a crime he committed when he was 20 years old, is a *de facto* life sentence that violates the proportionate penalties clause. The court summarily dismissed the petition at the first stage. Defendant appeals.

¶ 10                                      II. ANALYSIS

¶ 11 Defendant argues that the court erred by dismissing his postconviction petition at the first stage because he stated the gist of a claim that (1) his counsel provided ineffective assistance by advising him to accept an arguably unconstitutional 43-year *de facto* life sentence, and (2) his 43-year *de facto* life sentence is unconstitutional. Defendant argues that his sentence is a *de facto* life sentence because of the lower life expectancy of individuals serving lengthy prison sentences.

¶ 12 The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a process for a criminal defendant to assert that his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Defendant need only state the "gist" of a constitutional claim at the first stage. *Id.* The petition may be summarily dismissed at the first stage of proceedings if it is frivolous or patently without merit, such that it "has no arguable basis either in law or in fact." *Id.* at 16. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* "Meritless legal

5

theories include those theories that are completely contradicted by the record." *People v. Boykins*, 2017 IL 121365, ¶ 9. For an ineffective assistance of counsel claim to survive first-stage dismissal, defendant must show that "(i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17.

¶ 13    Here, it is not arguable that counsel's performance fell below an objective standard of reasonableness. Although defendant argues that his 43-year sentence is a *de facto* life sentence, there was no law supporting that argument at the time that he pled guilty. At that time, *People v. Reyes*, 2016 IL 119271, ¶ 9, which determined that "[a] mandatory term-of-years sentence that cannot be served in one lifetime has the same practical effect *** as would an actual mandatory sentence of life without parole" had just recently been decided. In that matter, the juvenile defendant had been sentenced to a mandatory minimum sentence of 97 years' imprisonment and was required to serve at least 89 years of that sentence. *Id.* ¶ 10. Additionally, the parties and the court all agreed "that defendant will most certainly not live long enough to ever become eligible for release." *Id.* The *Reyes* court did not further define what constituted a *de facto* life sentence other than indicating it was one which would most certainly result in a defendant dying in prison. See *id.* ¶ 9 (indicating that a term of years that cannot be served in one life has the same practical effect as a life sentence—"in either situation, the juvenile will die in prison"). Even considering defendant's argument regarding the lower life expectancy of individuals in prison it cannot be said that defendant's 43-year sentence would result in defendant dying in prison when he will be eligible for release at the age of 63. It was not until 2019 when the supreme court, in *People v. Buffer*, 2019 IL 122327, ¶ 41, determined that for juveniles, a prison sentence of over 40 years constitutes a *de facto* life sentence. Both *Reyes* and *Buffer* involved juvenile defendants, not

adults. Therefore, it is not arguable that counsel's performance in advising defendant to accept a 43-year deal when he was faced with the potential of up to 100 years' imprisonment was deficient in light of the state of the law at the time. See *People v. Reed*, 2014 IL App (1st) 122610, ¶ 66 ("[T]he effectiveness of *** counsel must be assessed against an objective standard of reasonableness from the perspective of the time of the alleged error and without hindsight.").

¶ 14   Further, although defendant argues that there was case law supporting the argument that the juvenile sentencing protections could apply to young adults, the case he cites—*People v. House*, 2015 IL App (1st) 110580, ¶ 80—involved a mandatory natural life sentence, which is very different than defendant's sentence of an agreed to 43 years' imprisonment or even the potential sentencing range he faced of 20 to 100 years' imprisonment. Moreover, on appeal, defendant has not cited to a single case in which our courts have found a discretionary, non-natural life sentence for an adult offender to be unconstitutional. Thus, it was objectively reasonable for counsel to advise defendant to accept an agreed sentence on the lower end of the sentencing range rather than risk a sentence at the high end on the off chance of later convincing a court that the sentence violated the proportionate penalties clause of the Illinois Constitution when the legal support for such an argument was slim to nonexistent.

¶ 15   We note that defendant briefly mentions that counsel also performed deficiently by advising him to plead guilty in light of his claimed lack of intent. However, the record makes clear that counsel discussed the viability of a defense of involuntary manslaughter and did not believe it was meritorious such that his advice to plead guilty cannot arguably be said to constitute deficient performance.

¶ 16   Therefore, we conclude that counsel's advice to defendant to accept the plea agreement was not arguably deficient and thus, his ineffective assistance claim was frivolous and patently

7

without merit. Regardless, it is not arguable that defendant was prejudiced because the court indicated that it believed defendant deserved a higher sentence and had defendant refused the plea deal, in all likelihood he would have been found guilty and received a higher sentence than the 43 years he agreed to.

¶ 17    Turning to defendant's contention that his sentence is unconstitutional, defendant entered into a fully negotiated plea and "[b]y entering a plea agreement, a defendant 'forecloses any claim of error. "It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, including constitutional ones." ' " *People v. Jones*, 2021 IL 126432, ¶ 20 (quoting *People v. Sophanavong*, 2020 IL 124337, ¶ 33 (quoting *People v. Townsell*, 209 Ill. 2d 543, 545 (2004))). The *Jones* decision held that defendant waived any constitutional challenge to his sentence based on *Miller v. Alabama*, 567 U.S. 460 (2012) and its progeny, despite *Miller* having been decided after his plea and it "conclude[d] that petitioner's knowing and voluntary guilty plea waived any constitutional challenge based on subsequent changes in the applicable law." *Jones*, 2021 IL 126432 ¶¶ 13, 26. Thus, because defendant waived any challenge to his sentence by entering a fully negotiated plea, his claim that his sentence is unconstitutional is patently without merit.

¶ 18    Based on the foregoing, the court did not err by dismissing defendant's postconviction petition at the first stage.

¶ 19                                  III. CONCLUSION

¶ 20    The judgment of the circuit court of Peoria County is affirmed.

¶ 21    Affirmed.

8