2023 IL App (1st) 220364-U
Order filed: November 2, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-0364

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 06 CR 1226901 |
| | ) | |
| ANTHONY T. REYNOLDS, | ) | Honorable |
| | ) | Geraldine D'Souza, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reversed the denial of defendant's motion for leave to file a successive postconviction petition and remanded for second-stage proceedings, finding that defendant made a colorable claim of actual innocence.

¶ 2    Defendant, Anthony T. Reynolds, appeals the denial of his motion for leave to file a successive postconviction petition, which asserted a claim of actual innocence. We reverse and remand for second-stage proceedings.

¶ 3    The State charged defendant with first-degree murder arising out of the fatal shooting of Martel Edwards on April 28, 2006. On that night, Martel was at a car wash in South Holland,

Illinois, with David Dabbs, William Blasingame, Nathaniel Arnold, Stephen Henderson, and Deon Maloney. Defendant arrived in an automobile with Raymond Lipscomb and Kendall Edwards.

¶ 4    Dabbs testified that defendant walked up to him, shook his hand and asked for "Willie," referencing William Mathers who had shot defendant about one year earlier. Dabbs replied that Willie was not there. Martel approached and defendant shook his hand too. Lipscomb approached a few seconds later and immediately began firing a gun in Dabbs' and Martel's direction. Dabbs took cover and did not see defendant holding or firing a gun.

¶ 5    Blasingame testified that he saw defendant and Lipscomb arrive and then walk over to Dabbs. Defendant shook Dabbs' hand. Martel walked over to defendant, who shook his hand too. Lipscomb and defendant then both fired multiple gunshots in the direction of Dabbs and Martel before leaving the scene.

¶ 6    Arnold testified that he saw defendant speak first with Dabbs and then with Martel. Less than a minute later, Lipscomb, who was standing nearby, fired a gun towards Dabbs and Martel. Defendant also fired a gun one time in the direction of Dabbs and Martel. Arnold did not see anyone else other than Lipscomb and defendant holding a gun. Arnold saw defendant and Lipscomb leave the scene.

¶ 7    Henderson testified to seeing Dabbs talking with defendant. Martel began walking toward them. Gunshots rang out and Henderson saw defendant and Lipscomb shooting Dabbs and Martel before fleeing the scene.

¶ 8    Maloney testified that he saw Dabbs talking to defendant and Lipscomb while Martel approached them. Defendant and Lipscomb then fired several shots in the direction of Martel and Dabbs before leaving the scene.

¶ 9    Officer Kevin Carter testified that he arrived at the scene, where Martel was lying on the ground with blood on his torso. People were milling around him, complaining that the ambulance was slow in arriving. Eventually, some persons put Martel in a vehicle and drove him to the hospital, where he died.

¶ 10    Doctor Clare Cunliffe testified she performed the autopsy on Martel. She determined that the cause of death was multiple gunshot wounds and the manner of death was homicide.

¶ 11    Detective Chris Lareau testified that he arrested defendant at a vacant house in Robbins, a nearby suburb, on May 2, 2006.

¶ 12    Defendant testified that he was with Kendall and Lipscomb in Kendall's automobile when they passed the car wash and noticed Dabbs and Blasingame. Defendant explained that there had been an altercation and tension between a faction of people on the east side of Harvey, where Dabbs and Blasingame lived, and the west side where defendant lived. Defendant wanted to squelch any animosity with Dabbs so they pulled over at the car wash. Defendant walked over to Dabbs, shook his hand, and they engaged in a brief conversation about ending the conflict between the east-side and west-side of Harvey.

¶ 13    Dabbs suddenly shouted, "Hey, check it out." Defendant saw Martel approaching quickly with his hand on a gun on his hip. Defendant believed Martel was going to shoot him. However, defendant could not draw his own gun, a .40 caliber pistol, because he and Dabbs were still locked in a handshake; he believed that Dabbs did this to keep him from drawing his gun. Defendant then heard gunshots nearby. Defendant pulled his hand away from Dabbs and began to flee. As he ran, defendant fired his gun in the direction of the shooter, to discourage his attackers from firing more shots. Defendant jumped in Kendall's automobile. Lipscomb then entered the vehicle, which

surprised defendant, as he did not know that Lipscomb had left the automobile. They fled the scene.

¶ 14    On cross-examination, the State asked defendant a series of questions about statements he made to police soon after his arrest. Defendant testified that he did not tell the police that he was with Lipscomb and Kendall on the night of the shooting or that he saw Martel holding a gun. Defendant may have told the police that a man nicknamed Little Mo fired two guns at Martel and Dabbs. Little Mo was Lipscomb's nickname. On redirect-examination, defendant testified that he did not provide police with Lipscomb's real name because "[t]he man just saved my life."

¶ 15    Defense counsel informed the court, outside the presence of the jury, that they could not present Lipscomb's testimony because his attorney informed the defense that Lipscomb would assert his fifth amendment right to remain silent.

¶ 16    The trial court instructed the jury on intentional murder (720 ILCS 5/9-1(a)(1) (West 2008)), knowing murder (*id.* § 9-1(a)(2)), and on felony murder (*id.* § 9-1(a)(3)) predicated on the underlying felony of aggravated discharge of a firearm. The jury convicted defendant of intentional/knowing murder, finding him legally accountable for Lipscomb's shooting and killing of Martel. The jury also convicted defendant of felony murder, predicated on the underlying felony of aggravated discharge of a firearm. The trial court merged the felony murder conviction into the intentional/knowing murder conviction and sentenced defendant to a total of 60 years' imprisonment. On direct appeal, this court affirmed. See *People v. Reynolds*, 2012 IL App (1st) 092625-U.

¶ 17    In 2013, defendant filed an amended postconviction petition alleging that his trial counsel provided ineffective assistance by failing to call Kendall, Jonathan Phillips, and Patrick Taylor to

testify at trial. In support, defendant submitted affidavits from Kendall, Taylor, and from private investigator William Pederson.

¶ 18    Kendall stated that on the night of the murder, he was riding in an automobile with defendant and Lipscomb. They stopped at a car wash so that defendant could speak with Dabbs about ending the violence between two rival groups in the area. Defendant and Lipscomb exited the vehicle. Defendant approached Dabbs, who was standing with a group of men; Lipscomb went to the rear of the automobile. Defendant and Dabbs shook hands, after which two men came out from behind another vehicle with guns in their hands. Kendall heard shots coming from behind his automobile and saw defendant drop to his knees, pull a weapon, and fire one time to his rear. Defendant crawled back to Kendall's automobile and Lipscomb jumped into the back seat. Defendant drove off.

¶ 19    Pederson stated that in his capacity as a private investigator working for defendant's attorney, he conducted a March 2013 phone interview with Phillips. Phillips said that on the night of the murder, he was at the car wash when he saw defendant drive up with two men. Defendant and one of the other men exited the vehicle. Defendant walked over to Dabbs, who turned his head in the direction of another vehicle and "said something." Two men with handguns exited that vehicle and shots were fired. Defendant crouched down, crawled back to his automobile, and drove away. Phillips never observed defendant shooting a gun.

¶ 20    Taylor stated that on the night of the murder, he was at the car wash and saw defendant drive up with two other men. Defendant and one of the other men exited their automobile. Defendant went over to Dabbs and shook his hand, while the other man stood nearby drinking from a white cup. Dabbs yelled, and then Martell and a man named Shabba exited a different vehicle. Martell and Shabba each displayed a gun. Martell put his gun in his front waistband as he

approached defendant; Shabba "hung back." The man who had been drinking from the white cup then pulled a gun and "came up shooting." Defendant ran away back to his automobile; as he ran he fired his own gun once or twice over his back.

¶ 21    The postconviction court dismissed defendant's petition at the second stage.

¶ 22    In July 2017, defendant filed a *pro se* motion for leave to file a successive postconviction petition, claiming actual innocence based on newly discovered evidence from Lipscomb and Ramirez Taylor. Defendant submitted an affidavit from Lipscomb, who stated that he, defendant, and defendant's cousin drove to the car wash so that defendant could speak with Dabbs. Defendant exited the vehicle and approached Dabbs, while Lipscomb also exited and stood next to the trunk of the automobile. Dabbs suddenly yelled, "Check it out," and then two men with guns exited a different vehicle. One of the men put his gun in his waistband and quickly approached defendant. As he reached defendant, the man began pulling his gun out of the waistband. A few months before this incident, defendant had been shot and Lipscomb was concerned that defendant was about to be shot again in the car wash. Therefore, Lipscomb opened fire on the man approaching defendant with the gun. After Lipscomb fired his weapon, defendant ran toward the automobile while also shooting one or two shots over his shoulder. Defendant and Lipscomb jumped in the automobile and drove away.

¶ 23    Lipscomb further stated that he did not testify at defendant's trial because he also was on trial for the murder and his attorney advised him not to talk until his own trial was over. Lipscomb subsequently was acquitted but "other legal matters" prevented him from talking until now.

¶ 24    Ramirez stated that he was at the car wash when he saw Martell walking toward defendant with a gun in his hand. Ramirez called out to defendant to warn him. Lipscomb then shot at Martell. Ramirez turned and ran away; as he ran he heard more gunshots. Later that night, Lipscomb

brought defendant over to Ramirez's house. Following defendant's arrest, Ramirez told his attorney that he was willing to testify on defendant's behalf. Ramirez's attorney advised him to "keep quiet" and "deal with [his] case first."

¶ 25    The postconviction court denied defendant's motion for leave to file his successive petition. Defendant appeals.

¶ 26    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a three-stage procedure for criminal defendants to raise constitutional issues about their trial or sentencing that could not have been raised on direct appeal. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 17. At the first stage, the postconviction court evaluates the petition and determines whether it is frivolous or patently without merit. *Id.* If the court determines that the petition is not frivolous or patently without merit, it is docketed for second-stage proceedings, during which counsel can be retained or appointed, and defendant must make a substantial showing of a constitutional violation. *Id.* If the petition makes a substantial showing of a constitutional violation, it advances to the third-stage evidentiary hearing where the postconviction court receives evidence and determines whether defendant is entitled to relief. 725 ILCS 5/122-6 (West 2020).

¶ 27    The Act provides that only one postconviction petition may be filed without leave of court. 725 ILCS 5/122-1(f)(West 2022). Where leave to file is granted, the successive petition is docketed for second-stage proceedings. *People v. Robinson*, 2020 IL 123849, ¶ 43

¶ 28    Leave to file a successive petition will be granted under two circumstances. The first basis for relaxing the bar against successive petitions is when defendant establishes cause and prejudice for failing to raise the claim earlier. *People v. Edwards*, 2012 IL 111711, ¶ 22. The cause-and-prejudice test is now codified in the Act. 725 ILCS 5/122-1(f) (West 2022). The second basis is when defendant presents a colorable claim of actual innocence. *Edwards*, 2012 IL 111711, ¶ 23.

¶ 29    To establish a colorable claim of actual innocence, defendant must present newly discovered, material, noncumulative evidence that is so conclusive that it probably would change the result on retrial. *Robinson*, 2020 IL 123849, ¶ 47. Newly discovered evidence is evidence that was discovered after trial and that defendant could not have discovered earlier through the exercise of due diligence. *Id.* Evidence is material when it is relevant and probative of defendant's innocence. *Id.* Noncumulative evidence adds to the information that the jury heard at trial. *Id.* Finally, the conclusive character element requires defendant to present evidence placing the trial evidence in a different light and undermining the court's confidence in the judgment of guilt. *Id.* ¶ 56. New evidence is conclusive when, after considering it along with the trial evidence, a different result probably would occur. *Id.* ¶ 47. "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id.* ¶ 48.

¶ 30    We review *de novo* the postconviction court's denial of leave to file a successive petition asserting actual innocence. *People v. Beard*, 2023 IL App (1st) 200106, ¶ 37. In our review, we take all well-pleaded allegations in the petition and supporting affidavits as true unless they are positively rebutted by the record. *Robinson*, 2020 IL 123849, ¶ 45.

¶ 31    Defendant argues in his appellant's brief that the postconviction court erred in denying him leave to file a successive petition because he established a colorable claim of actual innocence to the charge of intentional/knowing murder based on the new evidence provided by Lipscomb and Ramirez. Defendant makes no argument in his appellant's brief as to his actual innocence for felony murder, explaining that because the felony murder conviction was merged with the intentional/knowing murder count, he was "limit[ing] his analysis to the effect the new evidence will have on the intentional murder conviction."

¶ 32      In response, the State cites *Buckner v. Polk*, 453 F. 3d 195 (4th Cir. 2006), which held that when claiming actual innocence, defendant must show his innocence of *all* theories of murder for which he was convicted. As defendant here was convicted of felony murder along with intentional/knowing murder, the State contends that defendant is required to make a colorable claim of actual innocence of felony murder in order to relax the bar against successive petitions. The State argues that defendant's failure to make any such arguments in his appellant's brief regarding his actual innocence of felony murder constitutes a waiver and requires us to affirm his murder conviction.

¶ 33      Waiver is the intentional relinquishment of a known right. *People v. Sophanavong*, 2020 IL 124337, ¶ 20. Here, defendant explained that he made no argument regarding his actual innocence of felony murder because, on direct appeal, we held that his conviction of felony murder was not appealable as no final sentence or judgment was entered on that count. See *Reynolds*, 2012 IL App (1st) 092625-U, ¶ 44. Based on our holding on direct appeal, defendant apparently believed in this appeal from denial of leave to file a successive petition that he only was required to show a colorable claim of actual innocence for intentional/knowing murder and was not required to make a similar showing of actual innocence for felony murder. Defendant was incorrect because, as we have discussed, he was required to show a colorable claim of actual innocence for *all* theories of murder for which he was actually convicted, including felony murder. As defendant clearly was mistaken regarding the showing required, and he did not intentionally relinquish his known right to argue for actual innocence of felony murder, we find no waiver.

¶ 34      We note that the State makes no argument that defendant *forfeited* his right to argue for absolute innocence of felony murder. Unlike waiver, which focuses on defendant's intent to relinquish a known right, forfeiture results when defendant fails to timely assert his rights,

regardless of his knowledge thereof or his intent. *People v. Lesley*, 2018 IL 122100, ¶ 37. The doctrine of forfeiture applies to the State as well as to defendant, and thus the State forfeited its right to argue defendant's forfeiture. *Sophanavong*, 2020 IL 124337, ¶ 21. Even addressing the issue of defendant's forfeiture, we note that Illinois Supreme Court Rule 341(j) (eff. Oct. 1, 2020) permits appellants to reply to arguments presented in the brief of the appellee. In his reply brief, defendant argues his actual innocence of felony murder. We will address the issue instead of deeming it forfeited. See *e.g.*, *Chamberlain v. Civil Service Comm'n of Village of Gurnee*, 2014 IL App (2d) 121251, ¶ 31 (addressing a due process argument raised for the first time in the reply brief). See also *People v. Accardo*, 139 Ill. App. 3d 813, 816-17 (1985) (issues first raised in a reply brief may be addressed if necessary to ensure a just result).

¶ 35   We proceed to examine defendant's claim of actual innocence of intentional/knowing and felony murder premised on Ramirez's and Lipscomb's affidavits. The State contends that Ramirez's affidavit does not support a colorable claim of actual innocence because it is not newly discovered. We agree. In his own supporting affidavit, defendant states that he was aware of Ramirez's proposed testimony as early as 2006, three years prior to trial, and so informed his defense counsel. Defendant provides no evidence that any effort was made to procure Ramirez's testimony or determine his availability or willingness to testify. On appeal, defendant posits that Ramirez "faced charges related to the incident" and could have asserted his fifth amendment right not to testify, thereby rendering him unavailable until he came forward with his affidavit. However, there is no evidence that Ramirez ever was charged in connection with Martel's murder or that he was planning on asserting his fifth amendment right if called to testify. Ramirez only averred that he stayed silent on advice of counsel. Defendant made no attempt to subpoena Ramirez and gives no explanation for why a subpoena was not issued. On these facts, Ramirez's affidavit does not

constitute newly discovered evidence. See *Edwards*, 2012 IL 111711, ¶¶ 34-37 (evidence not newly discovered where the witnesses were known and could have been subpoenaed).

¶ 36    The State also contends that Lipscomb's affidavit does not support a colorable claim of actual innocence because it is not newly discovered. We disagree. Lipscomb was a codefendant and no amount of diligence could have forced him to waive his fifth amendment rights and testify at defendant's trial. As such, Lipscomb's affidavit, in which he states for the first time post-trial that he is willing to testify on defendant's behalf, constitutes newly discovered evidence. *Id.* ¶ 38 (evidence in affidavit was newly discovered where the affiant was a codefendant with a fifth amendment right to avoid self-incrimination); *Beard*, 2023 IL App (1st) 200106, ¶ 50 (same).

¶ 37    The State notes, though, that defendant's trial was conducted in 2009 and that Lipscomb was tried and acquitted three years later in 2012. Lipscomb's acquittal rendered his testimony available to defendant for postconviction purposes because Lipscomb no longer was in danger of self-incrimination for purposes of the fifth amendment. Although Lipscomb was available to testify following his acquittal in 2012, defendant did not submit Lipscomb's affidavit for another five years, until 2017, when he moved for leave to file a successive petition. The State argues that defendant's five-year delay in procuring Lipscomb's affidavit shows a lack of due diligence, post-trial, in discovering his testimony, and as such, that Lipscomb's affidavit cannot now be considered newly discovered evidence in support of a claim of actual innocence. The State's argument fails because our consideration is limited to determining whether evidence was discoverable *prior* to trial. See *Beard*, 2023 IL App (1st) 200106, ¶¶ 40-49. As we have discussed, Lipscomb's testimony was not available prior to trial because he was a codefendant with the fifth amendment right not to testify, and he had not yet been acquitted.

¶ 38    Next, the State argues that Lipscomb's affidavit is immaterial. We disagree. Initially, in analyzing the State's argument, it is important to recognize that defendant was convicted of murder based on his accountability for Lipscomb's shooting of Martel. Under Illinois law, no distinction is drawn between the perpetrator of the offense and one who is accountable for his conduct. *People v. Jones*, 2016 IL App (1st) 141008, ¶ 34.  The accountable defendant stands in the shoes of the perpetrator (*People v. Brown*, 197 Ill. App. 3d 907, 919 (1990)) meaning, for purposes of the present case, that where the perpetrator (Lipscomb) asserts self-defense or defense of others, the one who is accountable (defendant) may similarly assert the same claim. *Jones*, 2016 IL App (1st) 141008, ¶ 34.

¶ 39    To show that Lipscomb acted in self-defense or defense of others, defendant must show that unlawful force was threatened against Lipscomb or others; Lipscomb was not the aggressor; the danger of harm was imminent; the use of force was necessary; Lipscomb subjectively believed a danger existed requiring the use of force; and Lipscomb's belief was objectively reasonable. *People v. Taylor*, 2016 IL App (1st) 141251, ¶ 11.

¶ 40    With this backdrop in mind, Lipscomb's affidavit (taken as true here) was clearly material to defendant's claim of self-defense/defense of others, as it asserted all the requisite elements, specifically: that Martel was rapidly approaching defendant at the car wash while withdrawing a gun from his waistband; neither defendant nor Lipscomb were the aggressors; the danger of harm was imminent; the use of force was necessary; Lipscomb subjectively believed a danger existed to defendant requiring the use of force applied; and Lipscomb's belief was objectively reasonable.

¶ 41    The State argues that Lipscomb's affidavit does not show that Martel threatened imminent force against defendant and it cites *People v. Smith*, 2021 IL App (1st) 181178-U[1], in support. In *Smith*, the petitioner appealed the summary dismissal of his petition, arguing that his trial counsel was ineffective for failing to call witnesses who would have supported his claim of self-defense. *Id.* ¶¶ 24, 30. In affirming, we noted that the proposed witnesses did not state that the petitioner saw a gun or knew that the victim was armed and, thus, their testimony would not even arguably establish self-defense because there was no showing that unlawful force was threatened against the petitioner and that the danger of harm was imminent. *Id.* ¶ 32.

¶ 42    By contrast, in the present case, Lipscomb states that he saw Martel reaching for a gun while rapidly approaching defendant and that Lipscomb thought Martel was going to shoot defendant. Taken as true, Lipscomb's affidavit makes the requisite showing of the threat of unlawful force and imminent danger of harm.

¶ 43    The State argues that Lipscomb's affidavit is not material because his assertion that he shot Martel to prevent him from shooting defendant only supports a colorable claim of actual innocence of intentional/knowing murder but does not support a colorable claim of actual innocence of felony murder. In support, the State notes that on direct appeal in this case, we stated that "[t]he law in Illinois clearly establishes that self-defense may not be used by a defendant to defend against a charge of felony murder." *Reynolds*, 2012 IL App (1st) 092625-U, ¶ 36. The State contends that our determination, on direct appeal, that self-defense is not applicable to the charge of felony murder is the law of the case and cannot be relitigated.

---

[1] Rule 23(e) states that "a nonprecedential order entered under subpart (b) of this rule on or after January 1, 2021, may be cited for persuasive purposes." Ill. S. Ct. R. 23(e) (eff. Feb. 1, 2023).

¶ 44    The law of the case doctrine bars relitigation of an issue already decided in the same case. *People v. Tenner*, 206 Ill. 2d 381, 395 (2002). On direct appeal, the issue we decided was whether the trial court should have given the offered instruction on self-defense and defense of others. *Reynolds*, 2012 IL App (1st) 092625-U, ¶ 31. We held that the court committed no abuse of discretion in refusing to give the instruction, as there was no evidence at trial in support thereof and the instruction was confusing as it combined the concepts of accountability and self-defense into the felony murder instruction. *Id.* ¶¶ 34-36. It was in the context of discussing the alleged instructional error that we made the statement that the trial court committed no abuse of discretion because self-defense is not a defense to felony murder. *Id.* ¶ 36.

¶ 45    Whereas the direct appeal concerned alleged instructional error at trial, the present appeal involves whether defendant made a colorable postconviction claim of actual innocence. The issues in the direct appeal and here on appeal from denial of leave to file a successive petition are not the same and accordingly the law of the case doctrine does not apply.

¶ 46    Moreover, we note that while our statement on direct appeal regarding how self-defense is not a defense to felony murder is generally true, there is an exception where the belief in the need for self-defense and/or defense of others occurred *before* defendant formed the intent to commit the underlying felony. *People v. Walker*, 392 Ill. App. 3d 277, 287-88 (2009). In those instances, self-defense and defense of others is available to defendant. *Id.* In this case, Lipscomb's affidavit, taken as true, shows that his belief in the need to shoot Martel to keep him from shooting defendant occurred before defendant formed an intent to commit the underlying felony of aggravated discharge of a firearm. As such, Lipscomb's affidavit is material to defendant's guilt or innocence of felony murder.

¶ 47    The State further argues that Lipscomb's affidavit is not material because it raises a defense of others, which is an affirmative defense addressing only defendant's legal innocence and not the factual innocence he is required to show in support of his actual innocence claim. We disagree. Defendant is not challenging the verdict against him based on a trial court error or constitutional violation, rather he is challenging the factual evidence to support his conviction. Accordingly, we reject the State's argument that the defense of others cannot form the basis of an actual innocence claim. See *People v. Williams*, 2021 IL App (1st) 190239, ¶ 43 (citing cases recognizing the viability of an actual innocence claim based on newly discovered evidence in support of an affirmative defense, including evidence of self-defense and compulsion); *People v. Horton*, 2021 IL App (1st) 180551, ¶ 46 (self-defense may serve as the basis of an actual innocence claim).

¶ 48    The State contends that Lipscomb's affidavit is not material because it fails to show defendant's innocence for aggravated discharge of a firearm, the underlying offense for his felony murder conviction. In support, the State cites *Horton*, 2021 IL App (1st) 180551, which held that an actual innocence claim does not encompass a situation where the newly discovered evidence exonerates defendant of first-degree murder but establishes his guilt of second-degree murder, because actual innocence requires that defendant be "free of liability both for the crime of conviction and for any related offenses." *Id.* ¶ 46. Pursuant to *Horton*, the State argues that defendant is required to show his actual innocence here not only of felony murder, but also of the related, lesser-included offense of aggravated discharge of a firearm. See *People v. Bailey*, 2013 IL 113690, ¶ 17 (the predicate offense underlying a charge of felony murder is a lesser-included offense of the murder).

¶ 49    Defendant replies that, counter to the State's argument, Lipscomb's affidavit makes a colorable claim of defendant's actual innocence of aggravated discharge of a firearm. We agree,

as Lipscomb's affidavit, taken as true, shows that defendant fired his weapon in self-defense, thereby exonerating him of the offense of aggravated discharge of a firearm and serving as the basis of an actual innocence claim. See *People v. O'Neal*, 2016 IL App (1st) 132284, ¶ 80 (self-defense "would completely exonerate defendant of the offense of aggravated discharge of a firearm"). Accordingly, we reject the State's arguments that Lipscomb's affidavit is immaterial to defendant's innocence.

¶ 50    Next, the State argues that Lipscomb's affidavit is cumulative. We disagree. Lipscomb's affidavit is not cumulative as it corroborates defendant's testimony that Martel was rapidly approaching him with a gun prior to the shooting and conflicts with the State's witnesses who testified to seeing Lipscomb shoot at Martel without any justification. No other witness at trial provided such corroborating testimony. See *e.g.*, *People v. Willingham*, 2020 IL App (1st) 162250, ¶ 27 (new evidence corroborating defendant's testimony that he acted in self-defense, and conflicting with State's witnesses who testified that the shooting was unjustified, was material and noncumulative).

¶ 51    Next, the State argues that Lipscomb's affidavit is not so conclusive as to probably lead to a different result given the evidence it presented at trial of defendant's guilt. The State's evidence included: the testimony of Dabbs, Blasingame, Arnold, Henderson, and Maloney that the shooting was unjustified; Arnold's testimony that Dabbs was unarmed; and defendant's failure to initially tell the police that Dabbs was armed and that defendant and Lipscomb acted in self-defense. The State contends that in light of all this evidence of defendant's guilt presented at trial, Lipscomb's conflicting affidavit is not enough to show a probability that a retrial would lead to an acquittal.

¶ 52    *Robinson*, 2020 IL 123849, is informative. In *Robinson*, the petitioner appealed from an order denying him leave to file a successive postconviction petition alleging actual innocence

based on newly discovered evidence. *Id.* ¶ 1. The appellate court affirmed. *Id.* The supreme court noted that the appellate court erred by premising its decision on a "conflicting evidence" standard, *i.e.*, the appellate court held that the evidence in petitioner's supporting affidavits did not satisfy the conclusive character element because it merely conflicted with the evidence at trial. *Id.* ¶ 57. The supreme court stated:

> "Although this court has occasionally made reference to the insufficiency of new evidence that conflicts with trial evidence, we have not done so where the relevant inquiry involved a request for leave to file a successive petition based on actual innocence. Rather, those 'conflicting evidence' references were made in cases that decided whether a petition should advance to a third-stage evidentiary hearing [citation] or whether a new trial should be granted following such a hearing [citations]." *Id.* ¶ 58.

¶ 53    The supreme court differentiated an earlier case, *People v. Sanders*, 2016 IL 118123. *Sanders* involved the second-stage dismissal of a successive postconviction petition. *Id.* ¶ 1. *Sanders* held that the new evidence presented there did not make a substantial showing of actual innocence because the new evidence merely added conflicting evidence to the evidence adduced at trial and was not so conclusive as to change the result. *Id.* ¶¶ 52-55. *Sanders* also was premised on the fact that some of the new evidence—an assertion that the victim only had been shot once— was positively rebutted by the autopsy evidence at trial showing that the victim had been shot multiple times. *Id.* ¶ 52. The *Robinson* court held that *Sanders* was inapposite because "[t]he substantial showing required to avoid dismissal at the second stage is greater than the standard that must be satisfied to obtain leave to file a successive petition." *Robinson*, 2020 IL 123849, ¶ 43. *Robinson* further held:

"For new evidence to be positively rebutted, it must be clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible—like the single-gunshot evidence in *Sanders*. We now clarify that the inquiry applicable at the leave-to-file stage of successive proceedings does not focus on whether the new evidence is inconsistent with the evidence presented at trial. Rather, the well-pleaded allegations in the petition and supporting documents will be accepted as true unless it is affirmatively demonstrated by the record that a trier of fact could never accept their veracity. In assessing whether a petitioner has satisfied the low threshold applicable to a colorable claim of actual innocence, the court considers only whether the new evidence, if believed and not positively rebutted by the record, could lead to acquittal on retrial." *Id.* ¶ 60.

¶ 54    In the instant case, Lipscomb's affidavit asserts that defendant is actually innocent because Lipscomb (for whom defendant is accountable) shot and killed Martel to prevent Martel from killing defendant. Although Lipscomb's affidavit is contradicted by the trial testimony of the State's witnesses, a conflict with the trial evidence is not the same as finding that the new affidavit is positively rebutted. *Id.* As discussed, to be positively rebutted, the new affidavit must be affirmatively and incontestably demonstrated to be false or impossible such that no juror could accept it as true. *Id.* No such showing has been made here and thus Lipscomb's affidavit must be accepted as true, thereby foreclosing us from engaging in any credibility determinations (*id.* ¶45) and leaving us with a conflict in the evidence as to whether defendant was innocent. Lipscomb's affidavit, taken as true at the leave-to-file stage, satisfies the conclusive character element as it places the trial evidence in a different light, undermines this court's confidence in the judgment of guilt, and constitutes a substantial showing of actual innocence necessitating further proceedings

-18-

with counsel. *Id.* ¶ 73 (a new affidavit asserting petitioner's actual innocence that conflicted with, but was not positively rebutted by, the State's witnesses, constituted "reason to allow petitioner to proceed, with counsel, on his colorable claim of actual innocence").

¶ 55    For all the foregoing reasons, we reverse the denial of defendant's motion for leave to file a successive petition and remand for the appointment of counsel and second-stage proceedings.

¶ 56    Reversed and remanded.